UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**JEFFRY L. SANFORD**

**VERSUS**                                              **CIVIL ACTION**

**JOSHUA KIRST, HERBERT ALLEN,**                        **NO. 21-347-JWD-RLB**
**and the CITY OF BATON ROUGE**

RULING AND ORDER

This matter comes before the Court on *Plaintiff's FRCP Rule 59 Motion to Reconsider Summary Judgment of Dismissal* ("*Motion to Reconsider*") filed by Jeffry L. Sanford, individually and on behalf of his minor son, JS ("Plaintiff"). (Doc. 43.) Defendants Joshua Kirst named in his individual capacity ("Kirst"), Herbert Allen named in his individual capacity ("Allen"), and the City of Baton Rouge ("the City"), (collectively, "Defendants"), oppose the *Motion to Reconsider*. (Doc. 54.) Plaintiff has filed a reply. (Doc. 55.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.  For the following reasons, the *Motion to Reconsider* is denied.

I.    **INTRODUCTION**

   **A.  Factual Background**

This case arises out of a dispute between Plaintiff and two Baton Rouge Police Department ("BRPD") officers, Kirst and Allen, who were dispatched to Plaintiff's home to conduct a welfare check on his twelve-year-old son. (Doc. 1, *Compl.* at 2–3.) On August 23, 2020, at around 11:00 p.m., Plaintiff's ex-wife contacted BRPD and stated that Plaintiff had taken their son's phone away from him and blocked her from the phone. (Doc. 27-1, Defs. Ex. C, Recorded 911 Call at 0:20–

0:28.)[1] During this 911 call, she reported that Plaintiff had been "very abusive" to her and requested that law enforcement meet her at Plaintiff's home to "see if all is okay." (*Id.* at 0:15–0:19, 0:29–0:39.) The dispatcher informed Kirst that the complainant was on the way to Plaintiff's home "to check on her twelve-year-old son" and stated that the son's "father is physically abusive." (Def. Ex. E, Recorded Dispatch Call to Kirst at 0:11–0:21.) The dispatcher also sent a summary of this information through a "Computer Aided Dispatch" ("CAD"), which was available to both Kirst and Allen. (*See* Doc. 20-7, CAD Remarks ("Caller is in route here to make sure her 12 [year old] son is ok. She has been blocked from his phone and caller says the father is physically abusive . . . .").)

The parties offer differing points of view on whether Kirst continued to reasonably believe that the child was in danger at the time that the following events transpired, namely whether he observed the child through an uncovered window upon arrival at the home and if that made Kirst's belief of danger unreasonable. (*See* Doc. 43 at 2; Doc. 54 at 4–7.) Upon arrival at the home, Kirst and Allen knocked on the front door and announced themselves. (Doc. 27-2, Defs. Ex. G, Bodycam Footage of Kirst at 1:15–1:30.) Plaintiff answered the door, and the officers explained that Plaintiff's ex-wife had called 911 to report concerns regarding the wellbeing of their son. (*Id.*) Upon hearing that his ex-wife had requested a welfare check on their son, Plaintiff became extremely agitated. (*Id.* at 1:29–1:55.)

As the body camera footage and this Court's Ruling on Defendants' *Motion for Summary Judgment* explain, in the following minutes, Kirst and Plaintiff exchanged words, which ended

---

[1] In conjunction with their *Motion for Summary Judgment* (Doc. 15), Defendants filed a motion for leave to file certain exhibits conventionally. (Doc. 18.) The Court granted the motion in part, allowing Defendants to file all video and audio recordings conventionally, which Defendants did. (*See* Notice of Conventionally Filed Documents, Doc. 22.) Those conventional exhibits included: (1) Defs. Ex. C, Recorded 911 Call; (2) Defs. Ex. E, Recorded Dispatch Call to Kirst; (3) Defs. Ex. G, Bodycam Footage of Kirst; and (4) Defs. Ex. H, Bodycam Footage of Allen.

with Kirst reaching across the threshold of Plaintiff's doorway in an attempt to grab Plaintiff's arm. (*Id.* at 1:15–1:58; Doc. 27-7, Def. Ex. H, Bodycam Footage of Allen at 0:44–0:50.) Plaintiff responded by shoving Kirst in an attempt to keep him from entering his home. (*Id.*) After he was shoved by Plaintiff—who was yelling that the officer was not coming into his house—Kirst stepped inside the home and a brief scuffle ensued, during which time Plaintiff punched Kirst in the face. (Doc. 27-7, Def. Ex. H, Bodycam Footage of Allen at 0:49–0:54.) Though the video evidence is unclear as to whether Kirst then punched Plaintiff, Kirst admits as much in his deposition testimony. (Doc. 20-1, Kirst Depo at 47:19–21.) After approximately four or five seconds of Plaintiff and Kirst fighting in the home, Allen—standing a foot or so outside of the home—tased Plaintiff to gain compliance. (Doc. 27-7, Def. Ex. H, Bodycam Footage of Allen at 0:55–0:57; *see* Doc. 15-3, ¶ 13.)

Once restrained, Plaintiff was arrested for resisting an officer with force or violence. (Doc. 20-1, Kirst Depo at 40:7–10; 19th JDC Minute Entry, Doc. 20-3.) The parties have varying interpretations of the events that transpired in the next several minutes, but, in its Ruling on Defendants' *Motion for Summary Judgment*, the Court recounts both versions of events. (Doc. 37 at 8–9.) The Court then explains why the evidence relied upon by Defendants is more persuasive (*Id.*) As explained therein, Defendants' version of events is based on body camera footage of both officers as well as Kirst's deposition, during which Kirst stated that he "took [Plaintiff] down" because he believed Plaintiff was resisting his attempt to shackle his ankles and Plaintiff had turned his body and appeared to be trying to move towards the front of the police unit. (Doc. 20-1, Kirst Depo at 67:11–19; *see also id.* at 68:16–17 (when asked whether he believed Plaintiff was trying to escape, Kirst answered "Yes, he was trying to escape.").) At this point, Kirst took Plaintiff to the ground.

Following the takedown and with Plaintiff still pinned to the ground, EMS removed the taser prongs left in Plaintiff's body after Allen tased him. (Doc. 15-3, ¶ 18.) Due to the injuries Plaintiff sustained during these events, he was transported to Our Lady of the Lake North, (*Id.* ¶ 19), in Kirst's police unit instead of an ambulance, (Doc. 20-1, Kirst Depo at 55:12–16). Kirst, with Plaintiff in the car, departed for the hospital approximately twenty-five minutes after the leg-shackle encounter, and they arrived at Our Lady of the Lake North around ten minutes later. (Doc. 27-2, Defs. Ex. G, Bodycam Footage of Kirst at 53:00–1:04:16.) Thereafter, "[t]he medical professionals at Our Lady of the Lake North determined that Sanford should be transferred to Our Lady of the Lake on Essen Lane . . . ." (Doc. 15-3, ¶ 20; *see* Doc. 20-1, Kirst Depo at 51:15–22 (explaining that the hospital told him they found Plaintiff "had a broken rib and transferred him to the main campus").) Plaintiff was transported to the second hospital by ambulance. (Doc. 20-8, Sanford Depo at 20:3–4.)

According to Plaintiff, by initially transporting him to Our Lady of the Lake North, Kirst brought him to the "wrong hospital," as the severity of his injuries required treatment at a trauma center, which Our Lady of the Lake North does not have. (*Id.* at 18:22–25). Defendants, in contrast, claim that the decision to transport Plaintiff to Our Lady of the Lake North is consistent with "BRPD procedure." (Doc. 15-3, ¶ 19 (citing, *inter alia*, Doc. 20-1, Kirst Depo at 51: 1–11).) Following Plaintiff's transfer to Our Lady of the Lake on Essen Lane, the officers kept Plaintiff handcuffed to his bed until he was later released and booked. (Doc. 20-8, Sanford Depo at 20:5–16, 21:1–2.)

## B.  Procedural History and the *Summary Judgment Ruling* (Doc. 37)

Plaintiff filed this suit for damages alleging that Defendants violated Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments of the United States

Constitution; Louisiana State Constitutional Right to Privacy; and state law claims of trespass, assault, battery, false arrest and defamation. (Doc. 1 at 1.) Plaintiff also brought additional claims for mental anguish and emotional injuries on behalf of his minor son. (*Id.*) On January 13, 2023, Defendants filed a *Motion for Summary Judgment* (Doc. 15.), which the Court granted on June 16, 2023. (Doc. 37.)

The Court granted summary judgment on Plaintiff's federal law claims and dismissed them with prejudice. (*Id.*) The Court also declined to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissed those claims without prejudice. (*Id.*) With regard to Plaintiff's federal law claims, Plaintiff asserted claims under 42 U.S.C. § 1983 for the following constitutional violations: (1) retaliation for speech protected by the First Amendment against Kirst and Allen;[2] (2) false arrest in violation of the Fourth Amendment against Kirst only; (3) illegal entry into his home in violation of the Fourth Amendment against Kirst and Allen; (4) excessive force in violation of the Fourth Amendment against Kirst and Allen; and (5) denial and delay of medical treatment in violation of the Fourteenth Amendment against Kirst and Allen.[3] (Doc. 1, *Compl.*, ¶¶ 22–28.)

As to Plaintiff's illegal entry into the home claim, the Court granted qualified immunity as to both Defendants. (*See* Doc. 37 at 21–34.) The Court found: (1) Allen's entry into the home did not violate the Fourth Amendment given that there were exigent circumstances; and (2) Kirst's

---

[2] It was unclear to the Court whether Plaintiff asserted a First Amendment retaliation claim against Kirst and Allen or Kirst alone. The *Complaint* suggests that Plaintiff only meant to hold Kirst liable for retaliation. (*See* Doc. 1, *Compl.*, ¶ 22 (alleging that Kirst revealed his intent to retaliate against Plaintiff when he told him "[y]ou can't say f—k you to me" and approached the door).) On the other hand, Plaintiff's opposition brief indicates the claim is against both officers. (*See* Doc. 25 at 7 (arguing Plaintiff's First Amendment rights were violated "when Kirst and Allen retaliated . . .").) Out of an abundance of caution, the Court assumed that Plaintiff meant to assert a claim for First Amendment retaliation against both Kirst and Allen.

[3] Plaintiff improperly conflated his claim for excessive force and claim for delay and denial of medical treatment. (*See* Doc. 1, *Compl.*, ¶ 28.) In doing so, it was unclear whether he asserted the claim for denial and delay of medical treatment against Kirst and Allen or only Kirst. The Court assumed the claim was against both of them for purposes of its analysis.

entry did violate the Fourth Amendment, but his entry was not objectively unreasonable in light of clearly established law. (*Id.*) The Court granted qualified immunity as to both Defendants as well with respect to Plaintiff's First Amendment claim because even if reasonable jurors could conclude that the officers committed a constitutional violation, the law did not "so clearly and unambiguously" prohibit their conduct such "that *every* reasonable official" in their shoes would have understood that they were violating the law. (*Id.* at 37 (citing *McLin v. Ard*, 866 F.3d 682, 695 (5th Cir. 2017)).)

For Plaintiff's false arrest claim against Kirst, the Court granted Kirst qualified immunity because Plaintiff failed to establish that every officer in Kirst's position would have known, beyond debate, that his arrest of Plaintiff was unlawful in light of clearly established law. (*Id.* at 42.) Moreover, as to Plaintiff's excessive force claim, the Court found that he failed to establish a constitutional violation based on excessive force, and thus Kirst and Allen had qualified immunity. (*Id.* at 45.) Lastly, with respect to Plaintiff's Fourteenth Amendment claim, the Court found that since Kirst and Allen's actions did not amount to subjective deliberate indifference, there was no constitutional violation, and thus the officers were entitled to qualified immunity. (*Id.* at 56.)

After the Court granted summary judgment (Doc. 37) and entered judgment in favor of Defendants (Doc. 38), Plaintiff filed the present *Motion to Reconsider* (Doc. 43) and Memorandum in Support (Doc. 44). Plaintiff thereafter supplemented the record with respect to his *Motion to Reconsider*. *(See* Docs. 45, 46, 48, 49, 53.) Defendants filed an opposition to the *Motion to Reconsider* (Doc. 54), and Plaintiff filed a reply (Doc. 55). Plaintiff then filed a *Motion for Judicial Notice* (Doc. 56), which the Court denied (Doc. 57).

## II.    LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure allows a party to move to alter or amend a judgment within twenty-eight (28) days of its entry. Fed. R. Civ. Proc. 59(e). District courts have considerable discretion in deciding whether to grant a Rule 59(e) motion. *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993). The factors to be considered in a Rule 59(e) analysis are whether: (1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) the initial decision was manifestly unjust; (4) counsel engaged in serious misconduct; and (5) an intervening change in law alters the appropriate outcome. *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475–76 (M.D. La. 2002) (citing *Metairie Bank & Trust Co. v. Payne*, 2000 WL 979980 (E.D. La. July 17, 2000); *Campbell v. St. Tammany Par. Sch. Bd.*, 1999 WL 777720 (E.D. La. Sept. 29, 1999)). However, a motion for reconsideration is an extraordinary remedy and should be used sparingly in the interest of finality and conservation of judicial resources. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

The Court should deny a motion for reconsideration when the movant rehashes legal theories and arguments that were raised or could have been raised before the entry of the judgment. *See Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). A motion for reconsideration does not support old arguments that are reconfigured. *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316, n.18 (S.D. Tex. 1994). Mere disagreement with a prior ruling does not support a Rule 59(e) motion. *See e.g.*, *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

Courts in the Fifth Circuit are directed to take motions under Rule 59(e) seriously. Two cases note that Rule 59(e) does not place any particular limitations upon the possible grounds for

relief. *Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir. 1994); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*). The Court notes the Fifth Circuit's general principle that "the district court must strike a proper balance between two competing interests: 'the need to bring litigation to an end and the need to render just decisions.' " *Ford*, 32 F.3d at 937 (quoting *Lavespere, supra*).

### III.   ANALYSIS

The Court has extensively reviewed the parties' briefing and notes that much of Plaintiff's arguments are based on emotion and general dissatisfaction with the Court's *Summary Judgment Ruling*. Though Plaintiff makes specific points, which are examined below, he largely rehashes arguments he has already raised, attempts to raise new arguments his former counsel failed to originally address, and offers unsupported commentary as to his displeasure with the qualified immunity analysis.

While the Court sympathizes with Plaintiff and acknowledges what he and his minor child have gone through because of the events in relation to this case, the Court can only reconsider its prior ruling to the extent allowed under Rule 59. For the reasons set forth below, Plaintiff does not meet any of the factors favoring the granting of his *Motion to Reconsider* under Rule 59.

#### A.   Bodycam Footage

Plaintiff first argues that two bodycam videos constitute newly discovered evidence that would warrant to the Court to grant his *Motion to Reconsider*. (Doc. 43 at 2.) He explains that after withdrawal of Plaintiff's counsel of record, he employed an investigative paralegal to review the bodycam footage of Officers Kirst and Allen. (Doc. 44 at 3.) Thereafter, the investigative paralegal discovered conclusive video evidence that Kirst looked through a window into Sanford's living

room and observed minor JS resting "comfortably and calmly on a couch." (*Id.* at 3–4.) Thus, according to Plaintiff, this proves Kirst's claim of reliance on the dispatch to be false, making the judgment a "fraudulently obtained" nullity. (*Id.* at 4.)

Plaintiff also argues that the investigative paralegal discovered new evidence conclusively proving that Sanford was in the firm grip of Kirst at all times before, during, and after Kirst took Sanford to the ground. (*Id.* at 8.) This evidence, according to Plaintiff, disproves "the possibility that Sanford posed any threat of escape." (*Id.*) Further, the Court's grant of summary judgment "was premised on the Court's decision to award qualified immunity to Officer Kirst based on his self-serving testimony that he relied on inaccurate, false, third hand, double hearsay dispatch record in coming to a confused and unsubstantiated concern that the . . . child . . . was in danger of abuse at the hands of his father." (*Id.* at 3.)

The Court does not find either of these bodycam videos to constitute newly discovered evidence that would warrant a grant of Plaintiff's *Motion to Reconsider*. As Defendants correctly note in briefing, both videos "were already in possession of all parties prior to the filing of defendants' Motion for Summary Judgment." (Doc. 54 at 7.) Having an investigative paralegal review evidence that was already in the Plaintiff's possession does not transform that evidence into newly discovered evidence. As such, the existence of this evidence does not warrant granting Plaintiff's *Motion to Reconsider*.

Nor does this evidence prove that the Court made a manifest error of fact in its *Summary Judgment Ruling*. "[A] 'manifest error' is an obvious error that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.' " *Wease v. Ocwen Loan Servicing, L.L.C.*, 852 F. App'x 807, 809 (5th Cir. 2021) (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)). Plaintiff has made no such showing. With regard to the clip of minor JS resting

"comfortably and calmly on a couch[,]" it is not "plain and indisputable" that the child was out of harm's way. As Defendants explain, "the footage of Officer Kirst approaching the home does not confirm what he did or did not see through the window," and "even assuming that Officer Kirst observed the minor child through the window, such a brief visual would not have provided Officer Kirst enough information about the minor child's current condition, but more importantly, whether any imminent threat of harm existed in the household toward him." (Doc. 54 at 4.)

With respect to the footage related to Officer Kirst having a firm grip on Plaintiff at all times, it is not "plain and indisputable" that Plaintiff did not pose a threat of escape because some of his actions during the incident constituted resistance. Specifically, as noted by Defendants, "the body cam video footage at 26:05-26:07 provides visual confirmation that there was no physical control or hands on Sanford. It was during this same time wherein officers had no hands on Sanford (26:05-26:07) that Sanford moved his feet so as to not be restrained with the ankle cuffs." (*Id.* at 6.) For these reasons, the Court was not manifestly erroneous in its factual determination with regard to the bodycam footage to warrant granting Plaintiff's *Motion to Reconsider*.

### B. Family Court Documents

In his *Motion to Reconsider*, Plaintiff cites to Family Court documents from the 19th Judicial District Court and raises the following questions:

> Is counsel's failure to point out that Sanford had full legal custody of his child and his ex initiator of the alleged welfare check herein was under a contempt sanction of $10,000 that she must pay before ever suing him again? That her very request that[sic] the police violates an order requiring all communication between her and Plaintiff be made through attorneys? It certainly isn't excusable if it causes this Court to stain Jeffry Sanford with a slur of abuse that is erroneous as a matter of *res judicata*.

(Doc. 44 at 17–18 (citing Doc. 44-14, Consent Judgment).) Again, for a motion to reconsider, the Court can only consider newly discovered or previously unavailable evidence. *Livingston Downs*

*Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475–76 (M.D. La. 2002). This Consent Judgment was issued in 2017, and thus these Family Court documents were in Plaintiff's possession at the time he filed his opposition to Defendants' *Motion for Summary Judgment*. Therefore, this evidence is not newly discovered and was not previously unavailable. As such, this evidence does not warrant granting Plaintiff's *Motion to Reconsider*.

**C.  The Court's *Summary Judgment* Ruling is not manifestly unjust.**

Plaintiff argues that the Court's use of the words "abuse" and "abusive" in its *Summary Judgment Ruling* will "tarnish Sanford's reputation forever unjustly." (Doc. 44 at 9.) Moreover,

> It will certainly be a manifest injustice to stain Jeffry Sanford with a record of abuse that has been disproved in a final judgment. It will be a manifest injustice that manifests more injustice if Kirst is allowed to avoid responsibility for such blatant constitutional violations with perjured testimony so easily debunked as was allowed to serve as the basis of this Court's Ruling and Order (Dkt# 37) and Judgment (Dkt#38).

(*Id.* at 18.)

Nowhere in the Court's *Summary Judgment Ruling* does it state that Plaintiff was abusive or an abuser. Rather, the Court discusses *allegations* of abuse and the effect those allegations had on the officers' actions on the night of the incident. For this reason, the Court does not find that it's use of the words "abuse" and "abusive" were manifestly unjust nor tarnish Plaintiff's reputation. As such, the Court will not grant Plaintiff's *Motion to Reconsider* based on this issue.

**D.  The Court did not commit legal errors, and there are no intervening changes in law.**

In his *Motion to Reconsider*, Plaintiff asserts that the Court made various legal errors in its *Summary Judgment Ruling*. One legal error Plaintiff argues the Court made was placing the burden of unreasonableness on Plaintiff for the qualified immunity analysis. (Doc. 44 at 11.) According to Plaintiff, "No plaintiff can ever establish that every officer would know his conduct to be

unreasonable. Proving a negative is impossible. The Court erred as a matter of law by replacing the preponderance of the evidence standard of proof in a civil case is replaced[sic] with a standard of 100% infallibility." (*Id.* at 21.) However, as explain in the *Summary Judgment Ruling*,

> "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). To successfully refute the qualified immunity defense, Plaintiff "must point to summary judgment evidence" showing both "(1) that [the officers] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.' " *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (citation omitted)).

(Doc. 37 at 14.) While Plaintiff may be dissatisfied with the qualified immunity standard, the Court is bound to follow it. As such, the Court does not find that it committed legal error as to this issue that would warrant a grant of Plaintiff's *Motion to Reconsider*.

Plaintiff also argues that the Court erred in dismissing his case based on the violation of Middle District Local Rule 56. (Doc. 44 at 16–17.) As explained in the *Summary Judgment Ruling*, the Court did not dismiss Plaintiff's case solely because he violated Local Rule 56. Instead, "the facts set forth in Defendants' supporting statement of material facts that were not properly controverted . . . [were] deemed admitted for summary judgment purposes[,]" but "to the extent the objective evidence in th[e] case raise[d] a material issue of fact for trial, the Court [] consider[ed] those factual disputes in its analysis." (Doc. 37 at 1–2.) As such, the Court finds Plaintiff's argument that it dismissed Plaintiff's case because he violated Local Rule 56 without merit and will not grant Plaintiff's *Motion to Reconsider* based on this alleged legal error.

In addition, Plaintiff cites to the unpublished Fifth Circuit opinion of *Estate of Sturges ex rel. Anderson v. Moore*, 73 F. App'x 777 (5th Cir. 2003) for the following proposition:

> This *Sturges* case seems to offer some hope for the case where an attorney's view of the case may be so simplistic that he assumes the Court will see what he sees without need for following all the rules or even making all the arguments. Certainly this Honorable Court considered the record it had to the best of its ability given the lack of argument by Plaintiffs' counsel and lack of countervailing proofs. Certainly also, it made its decision, at least in part, on material facts it deemed admitted by way of sanction for the failure of Plaintiffs attorney to present countervailing proofs or even a detailed presentation of the evidence placed before the Court by Defendants.

(Doc. 44 at 15.) The Court notes that as an unpublished Fifth Circuit opinion, the Court is only bound to follow *Sturges* to the extent it finds it to be persuasive authority. Even if Plaintiff's interpretation of *Sturges* is correct, the Court is not persuaded to follow this line of reasoning given the Fifth Circuit's direction that the Court should deny a motion for reconsideration when the movant rehashes legal theories and arguments that were raised or could have been raised before the entry of the judgment. *See Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). Plaintiff's failure to raise arguments at the Summary Judgment stage does not mean he has the right to do so now. Again, a motion for reconsideration is an extraordinary remedy and should be used sparingly in the interest of finality and conservation of judicial resources. *Carroll v. Nakatani*, 342 F.3d 943, 945 (9th Cir. 2003). Therefore, the Court does not find that it made a legal error as to this issue that would warrant granting Plaintiff's *Motion to Reconsider*.

Plaintiff then argues that the Court improperly relied on *Linicomn v. Hill*, 902 F.3d 529 (5th Cir. 2018) in deciding the illegal entry claim because that case and the present cases are factually different. (Doc. 44 at 19.) In its *Summary Judgment Ruling*, the Court acknowledged that though similar, the cases had some factual differences. (*See* Doc. 37 at 31–33.) However, despite these differences, granting qualified immunity to Officer Kirst was still proper:

> *Linicomn* is certainly pertinent to the issue of whether exigent circumstances existed in this case. But, to overcome qualified immunity and thus defeat summary judgment, Plaintiff must show that "*all* reasonable officials in the [officers'] circumstances would have then known that [their] conduct violated the United

13

States Constitution." *Linicomn*, 902 F.3d at 538–39 (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001)). To say *all* reasonable officials in Kirst's position would have known that (a) he entered the home when he reached his arm inside, and (2) it was clearly established that the circumstances in this case did not create an exigency, the Court "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." [*McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017)] (quoting [*Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011)] (internal quotation marks omitted) (in turn quoting [*Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)])). Neither *Linicomn* nor any case Plaintiff has cited "defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (citation omitted). Thus, Plaintiff has failed to establish that every officer in Kirst's position would have known, beyond debate, that his conduct was unreasonable in light of clearly established law. Consequently, the Court finds that Kirst is entitled to qualified immunity on this claim.

(*Id.* at 33.)

The Court disagrees with Plaintiff that it should have relied on *Caniglia v. Storm*, 593 U.S. 194 (2021) and *Lange v. California*, 141 S. Ct. 2011 (2021) rather than relying on *Linicomn*. (*See* Doc. 44 at 18–20.) Plaintiff argues that "in neither the *Caniglia* case nor the *Lange* case did SCOTUS engage in the tortuous qualified immunity analysis that led to summary judgment in this case. Once SCOTUS found a constitutional violation, the requested relief was granted." (Doc. 44 at 20.) However, the reason the Supreme Court did not do so was because qualified immunity was not an issue before the Court, and therefore Plaintiff mischaracterizes *Caniglia* and *Lange*. As evident by the Fifth Circuit's 2023 decision in *Smith v. Lee*, 73 F.4th 376 (5th Cir. 2023), the "clearly established" prong has survived *Caniglia* and *Lange*.

Though Plaintiff did not bring *Smith v. Lee*, 73 F.4th 376 (5th Cir. 2023) to the Court's attention as new law that would warrant granting his *Motion to Reconsider*, the Court acknowledges that the Fifth Circuit denied qualified immunity in that case because the plaintiff's Fourth Amendment rights were clearly established at the time the officers unconstitutional entered the plaintiff's home. *Id.* at 384. The Court finds the present case distinguishable from *Smith v. Lee*.

In the present case, there was an issue as to exigent circumstances. *Smith v. Lee* does not clearly establish that the circumstances of the present case did or did not create an exigency, as that case dealt with consent to enter a home based on a plaintiff's silence. *Id.* ("Every reasonable officer would know they cannot enter a house based on the occupant's silence without first making an implicit or explicit request to enter.").

In conclusion, the Court does not find any legal errors or new developments in the law that would warrant granting Plaintiff's *Motion to Reconsider* nor has Plaintiff met any of the other factors favoring the granting of his Motion. As such, Plaintiff's *Motion to Reconsider* is denied.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Plaintiff's FRCP Rule 59 Motion to Reconsider Summary Judgment of Dismissal* (Doc. 43) filed by Jeffry L. Sanford, individually and on behalf of his minor son, JS, is **DENIED.**

Signed in Baton Rouge, Louisiana, on <u>March 26, 2024</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**